UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

EMOND BADIE ET AL.                                    CIVIL ACTION

VERSUS                                                NO. 11-2991

THE CITY OF NEW ORLEANS ET AL.                        SECTION "F"

ORDER AND REASONS

Before the Court is defendants' motion to dismiss under Federal Rule 12(c), or, alternatively, for summary judgment under Federal Rule 56.  For the reasons that follow, the motion is GRANTED in part, and DENIED in part.

Background

This dispute arises out of events that occurred during a traffic stop.

On January 4, 2011, a New Orleans Police Department Officer, George Olivier, observed a Chevrolet Camaro on the road with expired license plate tags.  Emond Badie was driving the vehicle, with his two minor daughters as passengers.  As Badie turned off the road and into his apartment complex, Officer Olivier followed Badie and activated his lights until Badie eventually stopped the vehicle.

The events that followed are disputed.  Badie submits that Officer Olivier demanded that he exit the vehicle, and that even

1

though he complied, Officer Olivier first handcuffed him and then tased him multiple times.  Badie further submits that after he was tased, Officer Olivier either wrapped the loose taser wire around his wrists or connected the wire to the handcuffs, and also hit him in the head with the taser gun.  Officer Olivier, however, submits that he instructed Badie to remain in the vehicle but that Badie instead exited the vehicle becoming belligerent and hostile. Officer Olivier submits he then ordered Badie to put his hands on the roof of the car, and that a struggle ensued when he attempted to handcuff Badie.  Officer Olivier submits he then repeatedly ordered Badie to put his hands behind his back, and only after Badie failed to comply did he tase Badie in the rear portion of his left thigh.  Officer Olivier denies wrapping the taser wire around Badie's wrists or hitting Badie with the taser gun.

A video camera attached to Officer Olivier's taser gun captured the events immediately preceding Badie's tasing as well as the tasing itself.  At the end of the altercation, Officer Olivier placed Badie under arrest for an expired license plate tag, lack of current registration, disregarding an officer's signal, improper signal method, and resisting an officer.

On December 6, 2011, Badie filed suit in this Court, individually and on behalf of his minor daughters, naming as defendants the City of New Orleans; the New Orleans Police Department; the New Orleans Superintendent of Police, Ronal Serpas,

in his official and individual capacity;[1] and Officer George Olivier, in his official and individual capacity. Badie alleges numerous claims under federal and state law. Under federal law, Badie asserts that defendants violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights and are liable pursuant to 42 U.S.C. § 1983. Specifically, Badie contends that the defendants violated his constitutional rights to be free from the use of excessive force and cruel and unusual punishment and to due process of law. Badie claims these violations were the direct result of illegal policies and customs of the City and Superintendent Serpas, and that defendants conspired together to deprive him of his rights. Under state law, Badie alleges various torts, including assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, slander, criminal conspiracy, and negligence. In sum, Badie seeks compensatory and punitive damages for himself, and compensatory damages on behalf of his daughters.

On January 24, 2012, plaintiff moved to voluntarily dismiss all claims against the NOPD, which the Court granted on January 25, 2012. Plaintiff's claims against the City, Superintendent Serpas, and Officer Olivier remain pending. Defendants now move to dismiss plaintiff's claims under Federal Rule 12(c), or, alternatively, for

---

[1] Plaintiff purports to sue Superintendent Serpas in his individual as well as his official capacity, however, plaintiff raises no substantive allegations to support this conclusory statement.

3

summary judgment under Federal Rule 56.

I.

A.

The standard for deciding a motion under Rule 12(c) of the Federal Rules of Civil Procedure is the same as the standard for deciding a motion under Rule 12(b)(6). Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 n.8 (5th Cir. 2002). "A motion brought pursuant to [Rule 12(c)] is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Id. at 312 (quoting Hebert Abstract Co. v. Touchstone Props. Ltd., 914 F.2d 74, 76 (5th Cir. 1990)).

In considering a Rule 12(b)(6), or a Rule 12(c), motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (quotation marks, citations, and footnote omitted).

With some exceptions, the Court's review on a motion to dismiss is limited to the complaint and any attachments. See Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006). Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)).

*B.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a

factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

*C.*

An exception to the summary judgment standard, however, may apply in cases involving video evidence. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372,

380 (2007). Accordingly, where the non-moving party's version of facts is clearly belied by videotape evidence, the Court considers the facts "in the light depicted by the videotape." Id. at 381. However, if the contents of the video are too uncertain, the Court must view the facts in the light most favorable to the non-moving party. Ramirez v. Martinez, 716 F.3d 369, 374-75 (5th Cir. 2013).

II.

A.

Plaintiff asserts § 1983 claims against the City, Superintendent Serpas, and Officer George Olivier.

1.

Municipalities are "persons" within the meaning of § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). But "[t]hey are liable only for their own acts and not those attributed to them by principles of *respondeat superior*." Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004) (citing Monell, 436 U.S. at 691-92). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

In other words, municipal liability for civil rights violations under § 1983 is causation-driven, rather than respondeat superior. Bolton v. City of Dallas, 541 F.3d 545, 548 (5th Cir.

7

2008). Thus, in determining whether municipal liability attaches, the Court looks to whether the plaintiff has shown, first, that the municipality adopted a policy[2] with "deliberate indifference" to its known and obvious consequences, and second that the municipality was the "moving force" behind the constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378 (1989).[3]

The defendants contend that the plaintiff fails to state a Monell claim that is plausible on its face. The Court agrees.

Plaintiff appears to assert that the City through Superintendent Serpas failed to train, supervise, or discipline Officer Olivier. The plaintiff's allegations are merely vague and conclusory. Not only does plaintiff fail to identify in his pleadings an official policy or custom, he falls well short of alleging that the City adopted a policy or participated in a widespread practice with deliberate indifference to its known

---

[2] Official municipal policy pursuant to Monell, the U.S. Supreme Court has observed, "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." See Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011)(citations omitted) ("These are 'action[s] for which the municipality is actually responsible.'").

[3] A plaintiff must show that unconstitutional conduct is directly attributable to the municipality through some official custom or policy; "isolated unconstitutional actions by municipal employees will almost never trigger liability." See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)(citations omitted).

consequences;[4] moreover, plaintiff also fails to allege causation: a violation of constitutional rights whose "moving force" is the City's policy or custom.

The Court need only reference the purely boilerplate allegations of the complaint to demonstrate that plaintiff has failed to state a claim for municipal liability. In Paragraphs 17 and 18, the plaintiff asserts:

> The constitutional violations and injuries to plaintiff were caused directly and proximately by the customs, policies, and practices of the defendant, CITY, through the NOPD and the defendant SERPAS, Chief of Police. These customs, policies and practices of the defendants CITY and SERPAS include: (1) The failure to properly train, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the excessive use of force and other police abuse; (2) the police code of silence; (3) police misconduct in order to protect themselves, the Department and the CITY from civil liability, criminal prosecutions and internal discipline.

These allegations are too generic and conclusory to be entitled to the presumption of truthfulness. Courts "do not presume true a number of categories of statements," the Fifth

---

[4] To establish deliberate indifference, a plaintiff must show a pattern of violations that are fairly similar to what ultimately transpired so that the failure of the City to respond with different training, better supervision, or punishment reflects a deliberate and conscious choice to endanger constitutional rights. See Valle v. City of Houston, 613 F.3d 536 (5th Cir. 2010). The plaintiff has failed to plead facts that if taken as true would allow the Court to draw the inference that the City is liable for the alleged misconduct of the named police officer.

Circuit reminds, "including legal conclusions; mere 'labels'; '[t]hreadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'" See Morgan v. Swanson, 659 F.3d 359, 370 (5th Cir. 2011) (citations omitted). These allegations simply fail to include sufficient factual matter which, accepted as true, would state a claim for municipal liability that is plausible on its face. The factual allegations in the complaint focus instead on individual police officer conduct, for which the City is not liable absent a showing that the moving force behind the conduct is the City's policy or custom.

Absent any allegation whatsoever attributing the alleged use of excessive force to an official policymaker, and some policy or custom (let alone that any hypothetical policy or widespread practice was the moving force behind the constitutional violations) that was adopted with deliberate indifference, the plaintiff fails to state a Monell claim.[5]

2.

"The doctrine of qualified immunity protects public officials from liability for civil damages insofar as their conduct does not

---

[5] Any separate "supervisory liability" claim against Superintendent Serpas likewise fails. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992) (citing Monell, 436 U.S. at 691-95). Plaintiff fails to allege any affirmative action by or policy of Superintendent Serpas that caused his alleged injuries. Mouille, 977 F.2d at 929.

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Brown v. Strain, 663 F.3d 245, 249 (5th Cir. 2011) (internal quotation marks and citation omitted). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223 (2009). In fact, "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).

To determine whether a public official is entitled to qualified immunity, the Court must determine (1) whether plaintiff has shown a violation of a constitutional right, and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232-33 (internal quotation marks and citation omitted). Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is unavailable. See Collier v. Montgomery, 569 F.3d 214, 217-18 (5th Cir. 2009) ("Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised."). A plaintiff must establish that the defendants were either

personally involved in the deprivation or that their wrongful actions were causally connected to the deprivation. James v. Texas Collin Co., 535 F.3d 365, 373 (5th Cir. 2008). And, "each individual defendant's entitlement to qualified immunity [should be examined] separately." Jacobs v. West Feliciana Sheriff's Dept., 228 F.3d 388, 395 (5th Cir. 2000)(citation omitted).

*a.*

Superintendent Serpas asserts entitlement to qualified immunity, and submits that plaintiff has failed to meet his burden to negate the assertion. The Court agrees. Plaintiff has neither alleged nor demonstrated that Superintendent Serpas violated a clearly established constitutional right. Pearson, 555 U.S. at 232. Any remaining claims against Superintendent Serpas in his individual capacity are therefore dismissed.

*b.*

Officer Olivier likewise asserts entitlement to qualified immunity and submits that plaintiff has failed to meet his burden. Plaintiff, however, contends that Officer Olivier violated his constitutional rights to be free from excessive force and false arrest, and malicious prosecution.[6] There is no dispute that Officer Olivier had probable cause to arrest plaintiff; plaintiff

---

[6] Although plaintiff also alleges cruel and unusual punishment, due process violations, and conspiracy in his complaint, he fails to even mention these claims in his response to Officer Olivier's assertion of qualified immunity.

pled guilty to one of the charges for which he was arrested (no current vehicle registration). Thus, plaintiff fails to allege a constitutional violation for false arrest or malicious prosecution. Heck v. Humphrey, 512 U.S. 477 (1994); see also Gibson v. State, 758 So. 2d 782, 788 (La. 2000). Accordingly, Officer Olivier is entitled to qualified immunity on the false arrest and malicious prosecution claims.

Plaintiff's claim of excessive force, however, presents a different question. To establish that Officer Olivier violated plaintiff's constitutional right to be free from excessive force, plaintiff must show: "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." Glen v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001). Although a showing of "significant injury" is no longer required in the context of an excessive force claim, the Fifth Circuit requires a plaintiff to have "suffered at least some form of injury." Williams v. Bramer, 180 F.3d 699, 700 (5th Cir. 1999). Further, the injury must be "more than a de minimis injury" and must be evaluated in the context in which the force was deployed. Id. To determine whether a use of force was reasonable, the Court looks to the totality of the circumstances, giving "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat

13

to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1983).

Officer Olivier submits that plaintiff fails to allege an injury, or alleges only a de minimis injury. However, plaintiff not only alleges various injuries including severe pain, unconsciousness, and scars, he also presents medical records indicating he suffered various abrasions, a first-degree burn on his hand, and a contusion on his head. Moreover, plaintiff successfully alleges that his injuries resulted directly from Officer Olivier's unreasonable use of force, whether true or not.

Officer Olivier next asserts his conduct was not excessive to the force needed or objectively unreasonable. Although he admits he tased plaintiff, Officer Olivier insists he did so before handcuffing plaintiff and only in response to plaintiff's active resistance. Plaintiff, however, contends Officer Olivier tased him after he was already handcuffed.

Officer Olivier submits this Court should reject plaintiff's version of the facts and instead view the facts in the light depicted by the video captured by Officer Olivier's taser gun. However, plaintiff's version of the facts is not so "blatantly contradicted" by the video such that no reasonable jury could believe it. Scott, 550 U.S. at 380. The contents of the video are too uncertain to discount plaintiff's allegations. Ramirez, 716

14

F.3d at 374-75. The camera faces downward; little of what occured is visible, and the audio is muddled by a barking dog. The video establishes only some degree of hostility from plaintiff, that Officer Olivier repeatedly requested that plaintiff place his hands behind his back, and that Officer Olivier then tased plaintiff for about twenty seconds. Although the video undermines plaintiff's contention that he was tased after he was handcuffed, it in no way contradicts plaintiff's allegation that Officer Olivier later wrapped the deployed taser wire around his wrists and hit him in the head with the taser gun. In fact, the video ends once the taser gun stops firing. Moreover, the record establishes that plaintiff suffered first degree burns to his hand and a contusion on his head, which cannot be explained by Officer Olivier's version of tasing plaintiff's rear thigh. Because the video does not blatantly contradict plaintiff's allegations regarding Officer Olivier's actions after the tasing, the Court views the evidence in the light most favorable to plaintiff. Viewing the record in the light most favorable to the plaintiff, any reasonable officer in Officer Olivier's place could arguably have recognized his conduct was objectively unreasonable. If, as plaintiff alleges, Officer Olivier wrapped hot taser wire around his wrists and hit him in the head with the taser gun after he was handcuffed and subdued, then a reasonable jury might decide that Officer Olivier's conduct was clearly excessive and objectively unreasonable. Ramirez, 716 F.3d

at 378-79 (use of force after handcuffing is objectively unreasonable). That's what trials are for. Not summary judgment. The right to be free from excessive force is beyond dispute. Pearson, 555 U.S. at 232-33; see Ramirez, 716 F.3d at 379. Because a genuine issue of material fact exists with respect to whether Officer Olivier continued to use force against the plaintiff after he was handcuffed and subdued, Officer Olivier is not summarily entitled to qualified immunity with respect to plaintiff's excessive force claim.

*B.*

Next, defendants target the state law claims for false arrest, false imprisonment, slander, criminal conspiracy, and negligence. For reasons already highlighted in this Order and Reasons, plaintiff's allegations regarding those state law claims are woefully incomplete and wholly conclusory. See Morgan, 659 F.3d at 370. As for plaintiff's claim of intentional infliction of emotional distress, plaintiff offers nothing to support that Officer Olivier desired to inflict severe emotional distress or knew or was substantially certain that such distress would result. See White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).

However, with respect to plaintiff's state law claims for assault, battery, and excessive force, the factual basis for these claims mirrors plaintiff's § 1983 excessive force claim. As to them, summary judgment is denied. Robertson v. Hessler, 13 So. 3d

1214, 1225-32 (La. App. 4 Cir. 2009); see Ramirez, 716 F.3d at 379-80.

*C.*

Finally, defendants challenge plaintiff's request for punitive damages. Punitive damages may be available for a § 1983 violation where the violation involves recklessness or gross disregard for the rights of the complaining party. Smith v. Wade, 461 U.S. 30, 56 (1983); Lincoln v. Case, 340 F.3d 283, 291 (5th Cir. 2003). Once again, material issues of fact obstruct summary relief.

In summary, defendants' motion is GRANTED IN PART as to all claims against the City, all claims against Superintendent Serpas, and all claims against Officer Olivier except for the federal and state law claims for excessive force, assault, and battery, as to which defendants' motion is DENIED IN PART.

New Orleans, Louisiana, September 12, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE